T.C. Memo. 2003-335


UNITED STATES TAX COURT


CLAUDIA F. WALKER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13842-02.               Filed December 8, 2003.


<u>J. Scott Moede</u> and <u>Jan R. Pierce</u>, for petitioner.

<u>Shirley M. Francis</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies of $9,104
and $32,949 in petitioner's Federal income taxes for 1997 and
1998, respectively, and penalties of $1,821 and $6,590 under
section 6662(b)(1) or, in the alternative, section 6662(b)(2),
for those years, respectively.  The issues for decision are:
(1) Whether petitioner reported the correct amount of gain

resulting from the sale of her interest in a parcel of property deeded to petitioner by her former (now deceased) husband, Bert Walker (Mr. Walker), on her 1997 and 1998 Federal income tax returns and (2) whether petitioner is liable for accuracy-related penalties under section 6662(a) for 1997 and 1998.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition in this case was filed, petitioner resided in Clackamas, Oregon.

Background

Petitioner and Mr. Walker were married on July 16, 1966. Prior to their marriage, petitioner had worked in several factories and had obtained a high school equivalent education. During their marriage, petitioner did not work outside the home. Mr. Walker worked as a realtor, property developer, and home builder. Petitioner and Mr. Walker divorced effective December 20, 1996.

At the time of their divorce, petitioner's and Mr. Walker's marital estate was worth several million dollars. Included in the marital estate was a piece of real property (Happy Valley property) located next to petitioner's and Mr. Walker's home in Clackamas County, Oregon, in which petitioner and Mr. Walker jointly owned a 50-percent interest. The other 50-percent interest in the Happy Valley property had been conveyed to a trust for the benefit of petitioner and Mr. Walker's children and grandchildren (Walker Family Irrevocable Trust).

The marital settlement agreement that was entered into by petitioner and Mr. Walker severed their joint ownership in the Happy Valley property and conveyed separate 25-percent interests to each of them. In accordance with the terms of the marital settlement agreement and pursuant to a bargain and sale deed signed and dated by petitioner and notarized on October 10, 1996, and signed and dated by Mr. Walker and notarized on October 17, 1996, petitioner and Mr. Walker, as grantors, conveyed to petitioner, as grantee, one-half of their previously jointly owned 50-percent interest in the Happy Valley property. The stated consideration for this conveyance was the Stipulated Judgment of Dissolution of Marriage (divorce decree) entered in Clackamas County (Oregon) Circuit Court Case No. 96 04 504, Walker v. Walker. Neither the marital settlement agreement nor

the divorce decree addressed the sale of the Happy Valley property.

In addition to providing to petitioner and Mr. Walker separate 25-percent interests in the Happy Valley property, the marital settlement agreement divided the rest of their real property and their personal property, contained a provision for an equalizing money judgment that required Mr. Walker to pay to petitioner $500,000, and required Mr. Walker to pay to petitioner spousal support in the amount of $4,000 per month until he satisfied the equalizing money judgment. The equalizing money judgment provided that "No interest shall accrue on the $500,000 judgment if paid within one year. If the judgment is not paid when due, the judgment shall accrue interest at the rate of 9 percent per annum from the date the judgment is entered." Petitioner's equalizing money judgment against Mr. Walker was secured by a note and a trust deed on several pieces of real property that were conveyed to Mr. Walker pursuant to the marital settlement agreement, including his 25-percent interest in the Happy Valley property. The equalizing money judgment was entered against Mr. Walker on November 20, 1996.

Correspondence Regarding the Tax Consequences of Transactions Involving the Happy Valley Property

On April 21, 1997, petitioner's divorce attorney, Raymond Young (Young), wrote a letter to Gary Leavitt (Leavitt), an accountant in Oregon City, Oregon, requesting advice on a

possible transaction involving petitioner, Mr. Walker, and the Happy Valley property. The pertinent parts of Young's letter to Leavitt are as follows:

> I am writing this letter on behalf of my client, Claudia Walker, who has a significant post-decree tax question. * * *
>
> In the divorce decree from Clackamas County in November 1996, Ms. Walker was awarded a $500,000 judgment against Mr. Walker. The judgment is due one year from the date of the judgment. As long as it is paid when due, no interest will accrue on the judgment. * * *
>
> Five months later, Mr. Walker is running into financial difficulties and two of the properties, an apartment complex and some bare land, are in the process of being sold. * * * In regards to the bare land, Mr. Walker holds a one-quarter interest in the property with Mrs. Walker holding another one-quarter interest in the property. After that sale is made, Mr. Walker's one-quarter interest should net him about $200,000 from the sale.
>
> The big question is, should Mr. Walker Quitclaim his * * * one-quarter interest in the bare land to Ms. Walker prior to the sale with a simple notation on the Quitclaim Deed that the consideration is a credit against the judgment owed to her for whatever amount she receives from the sale, who is responsible for the capital gains on Mr. Walker's portion? Essentially, it boils down to if Mr. Walker transfers his interest in the real property to Mrs. Walker, is it a taxable event for him, which requires him to declare the capital gains, or whether the capital gains responsibility and the basis carries over to Mrs. Walker so she has to pay capital gains on the proceeds of the sale herself.

Young sent a copy of this letter to petitioner, and she reviewed it.

On April 29, 1997, Young faxed the letter that he had sent to Leavitt to Kelly Coburn (Coburn), petitioner's accountant,

seeking Coburn's views on the tax consequences for the facts stated in the letter to Leavitt. Petitioner and Mr. Walker had been clients of Coburn's firm for many years, and Coburn continued to prepare their individual tax returns after their divorce. On May 1, 1997, Coburn wrote a response to Young. The pertinent parts of Coburn's response are as follows:

> I received your fax of a letter you sent to Gary Leavitt regarding a possible transfer of properties from Bert to Claudia prior to their sale. If the transfers occur within one year of the divorce, it is clear that Internal Revenue Code Section 1041 would apply. No gain or loss would be reported by Bert Walker, and Claudia Walker would take his basis in the property as her own. <u>Therefore, she would be responsible for any income taxes due on a subsequent sale.</u> [Emphasis added.]
>
> There are a couple of alternatives that could be considered. First, since Claudia will probably have little other income in 1997, she may be in a lower tax bracket than Bert and thus would pay less income tax on the gains than Bert would. If Claudia were to accept an assignment of the properties, Bert could perhaps agree to reimburse her for the income tax due on the gains.
>
> Or, since Claudia holds trust deeds on these properties, it should be possible for the escrow instructions to provide for a payment of some or all of the proceeds from the sales, even though Bert would be the seller. In that case, Bert would remain responsible for the income taxes on any gain. If this were done, Bert may wish to retain a portion of the proceeds, in order to pay the income taxes on the gains.

Coburn sent copies of his response to Young's letter to both petitioner and Mr. Walker, and petitioner reviewed her copy of his response.

The Transactions Involving the Happy Valley Property

The Happy Valley property was listed for sale with a realtor sometime during 1997. Mr. Walker served as the primary contact person for the realtor on the sale of the Happy Valley property. On or about August 19, 1997, a prospective purchaser, Cruz Development, Inc. (Cruz Development), offered to buy the Happy Valley property. Cruz Development was not related to petitioner or to Mr. Walker, and neither petitioner nor Mr. Walker had any legal obligations to Cruz Development. Cruz Development's offer to buy the Happy Valley property was based on obtaining approval for 48 buildable lots on the property at a price of $20,000 per lot. The sale of the Happy Valley property to Cruz Development, however, was not completed.

On September 22, 1997, petitioner signed a document entitled "Settlement Agreement" whereby she agreed to accept Mr. Walker's 25-percent interest in the Happy Valley property in consideration for a credit against the $500,000 equalizing money judgment. The Settlement Agreement used the following language:

> I Claudia F. Walker hereby agree to accept from Bert Walker his 25% interest in real property Tl. 2000 and Tl.2090 - Happy Valley, Oregon.
>
> This assignment will credit Bert Walker his 1/4 interest being approximately $213,500 less approximately $60,000 Capital Gains Tax; leaving $153,500 credit towards the divorce settlement.
>
> This calculation is based on 44 future building lots; the settlement amount may be adjusted up or down by $20,833,-per lot after subdivision approval.

> Claudia Walker agrees to pay deferred property taxes on hers and Bert's share.

The Settlement Agreement was also signed by Mr. Walker, but it was not dated by him.

On September 26, 1997, Mr. Walker signed and had notarized the quitclaim deed that conveyed his 25-percent interest in the Happy Valley property to petitioner. The Settlement Agreement was attached to the quitclaim deed and provided the consideration for the transfer of Mr. Walker's 25-percent interest in the Happy Valley property to petitioner.

On September 30, 1997, petitioner signed an earnest money agreement with a new and unrelated prospective buyer, Parker Development Northwest, Inc. (Parker Development), for the potential sale of the Happy Valley property. The earnest money agreement acknowledged earnest money of $200,000 and provided for release of that $200,000 to the listed sellers, petitioner and the Walker Family Irrevocable Trust, by October 15, 1997, and closing on or before October 31, 1997. On October 1, 1997, the trustee for the Walker Family Irrevocable Trust, which, as previously noted, owned a 50-percent interest in the Happy Valley property, signed the earnest money agreement. Mr. Walker did not sign the earnest money agreement and is not mentioned in this document.

The quitclaim deed that conveyed Mr. Walker's interest in the Happy Valley property to petitioner was recorded on

October 2, 1997. The bargain and sale deed that conveyed the Happy Valley property to Parker Development was signed by petitioner on October 10, 1997. This bargain and sale deed was recorded by Parker Development in November 1997. As shown on the Seller Final Closing Statement (closing statement), the closing date for Parker Development's purchase of the Happy Valley property was November 5, 1997. The closing statement listed only petitioner and the Walker Family Irrevocable Trust as sellers of 50-percent interests in the Happy Valley property. There was no reference in the closing statement to Mr. Walker's participating in the sale of the Happy Valley property.

Petitioner's and Mr. Walker's Tax Returns

Coburn prepared petitioner's Federal income tax returns for 1997 and 1998 (1997 and 1998 returns) and used the installment method to report the gain on the sale of a 25-percent interest in the Happy Valley property on those returns. Petitioner told Coburn that Mr. Walker agreed to pay the tax on 25 percent of the gain resulting from the sale of the Happy Valley property to Parker Development. Petitioner did not provide to Coburn the Settlement Agreement or quitclaim deed that transferred Mr. Walker's interest in the Happy Valley property to her while Coburn was preparing her 1997 and 1998 returns. Consequently, Coburn prepared petitioner's 1997 and 1998 returns without regard

to the 25-percent interest in the Happy Valley property formerly owned by Mr. Walker.

Coburn also prepared Mr. Walker's 1997 Federal income tax return (1997 return), which Mr. Walker filed on or about May 25, 1998. On his 1997 return, Mr. Walker reported a gain on the sale of a 25-percent interest in the Happy Valley property. Had Coburn been provided with the Settlement Agreement and quitclaim deed that transferred Mr. Walker's 25-percent interest in the Happy Valley property to petitioner, he would not have reported any gain from the sale of the Happy Valley property to Parker Development on Mr. Walker's 1997 return.

In January 2000, Mr. Walker gave to Coburn a copy of the Settlement Agreement that petitioner had signed on September 22, 1997, and which was attached to the quitclaim deed of September 26, 1997, and requested that Coburn amend his 1997 return. Mr. Walker also supplied to Coburn a copy of the quitclaim deed. Accordingly, in March 2000, Mr. Walker filed an amended Federal income tax return for 1997 to remove from his taxable income the gain on the sale of the Happy Valley property.

When Coburn told petitioner that Mr. Walker had amended his 1997 return, petitioner responded by telling him that the Settlement Agreement related to a transaction that had not occurred. Consequently, petitioner did not amend her 1997 and 1998 returns.

Mr. Walker died on August 31, 2001, while his refund claim for 1997 was pending. On July 24, 2002, respondent disallowed the refund claim that was filed by Mr. Walker for 1997 and sent to petitioner a notice of deficiency for 1997 and 1998. The notice of deficiency determined that petitioner's total tax liabilities were $11,221 for 1997 and $52,017 for 1998. Consequently, respondent determined deficiencies of $9,104 and $32,949 in petitioner's Federal income taxes for 1997 and 1998, respectively, and accuracy-related penalties of $1,821 and $6,590 under section 6662(a) for 1997 and 1998, respectively. The deficiencies were based on petitioner's failure to report the gain on the sale to Parker Development of the 25-percent interest in the Happy Valley property that had been transferred to her from Mr. Walker in September 1997. The accuracy-related penalties were imposed because the underpayment of tax on petitioner's 1997 and 1998 returns was determined to be attributable to petitioner's negligence or disregard of the rules or regulations under section 6662(b)(1) or, alternatively, to a substantial understatement of income tax under section 6662(b)(2).

The "Whipsaw" Position

This case is related to a refund action that is pending before the U.S. Court of Federal Claims, Walker Family Trust v. United States, No. 02-1454 T. The Walker Family Irrevocable

Trust, which is the plaintiff in the above-referenced refund action, owns its interest in Mr. Walker's claim by virtue of an assignment made by Mr. Walker's estate. Petitioner's deficiency action and the refund action brought by the Walker Family Irrevocable Trust constitute what is known as a "whipsaw" position for respondent because of the inconsistent positions taken by the two parties with respect to the gain resulting from the sale of the Happy Valley property to Parker Development.

OPINION

Petitioner's Gain on the Sale of the Happy Valley Property

Petitioner contends that under section 1041 she is liable for tax on only 25 percent of the gain that resulted from the sale of the Happy Valley property to Parker Development. Section 1041 provides a broad rule of nonrecognition-of-gain treatment for sales, gifts, and other transfers of property between spouses or between former spouses and incident to divorce. Sec. 1041(a). The basic policy of section 1041 is to treat a husband and wife as one economic unit and to defer, but not eliminate, the recognition of any gain or loss on interspousal property transfers until the property is conveyed to a third party outside the economic unit. Blatt v. Commissioner, 102 T.C. 77, 80 (1994). This policy extends to transfers of property between former spouses so long as the transfers take place incident to divorce. See sec. 1041(a)(2).

In advancing her argument, petitioner assumes that she can disavow the form of the transactions that occurred with respect to the Happy Valley property. Based on this assumption, petitioner asserts that the following substance should control the tax consequences of the transactions involving the Happy Valley property: The quitclaim deed of September 26, 1997, constituted a written request from Mr. Walker to petitioner that she sell his 25-percent interest in the Happy Valley property to a disinterested third party; therefore, petitioner's sale of the Happy Valley property to Parker Development took place on behalf of Mr. Walker. Petitioner contends that this substance falls within the scope of the second situation described in section 1.1041-1T(c), Q&A-9, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984). Accordingly, petitioner concludes that she should be provided nonrecognition-of-gain treatment under section 1041(a) as to the 25-percent interest in the Happy Valley property that she sold on behalf of Mr. Walker. As a backstop to her substance over form argument, petitioner contends that she filed her 1997 and 1998 returns in accordance with an agreement that she had with Mr. Walker that he would report one-half of the gain resulting from the sale of petitioner's undivided 50-percent interest in the Happy Valley property.

Conversely, respondent argues that petitioner failed to report a gain on the sale of property that she acquired in a

transaction incident to her divorce from Mr. Walker.  Respondent contends that petitioner agreed to accept a 25-percent interest in the Happy Valley property from Mr. Walker within 1 year of their divorce and in partial satisfaction of the equalizing money judgment.  Furthermore, respondent asserts that petitioner's substance over form argument has no merit and that Mr. Walker's alleged agreement to report part of the gain resulting from the sale of the Happy Valley property is not determinative.

In order to decide whether petitioner reported the correct amount of gain on the sale of the Happy Valley property on her 1997 and 1998 returns, we begin by considering whether petitioner can disavow the form of the transactions involving the Happy Valley property.

### A.  Petitioner's Assumption That She Can Disavow the Form of the Transactions Involving the Happy Valley Property in Favor of Their Alleged Substance

As a general rule, a taxpayer is bound by the form of the transaction that the taxpayer has chosen.  Framatome Connectors USA, Inc. v. Commissioner, 118 T.C. 32, 47 (2002); Steel v. Commissioner, T.C. Memo. 2002-113; see Estate of Durkin v. Commissioner, 99 T.C. 561, 571-572 (1992).  Taxpayers are ordinarily free to organize their affairs as they see fit; however, once having done so, they must accept the tax consequences of their choice, whether contemplated or not, and may not enjoy the benefit of some other route that they might

have chosen but did not. Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974); see also In re Steen, 509 F.2d 1398, 1402-1403 n.4 (9th Cir. 1975) (maintaining that to allow a taxpayer to challenge his own forms in favor of asserted "substance" would encourage posttransactional tax planning and unwarranted litigation and would raise a monumental administrative burden and substantial problems of proof for the Government).

Young's letter of April 21, 1997, and Coburn's response to Young's letter on May 1, 1997, establish that petitioner had been advised that she had several options that she could pursue with respect to using Mr. Walker's 25-percent interest in the Happy Valley property to satisfy at least a part of her equalizing money judgment. In particular, Coburn's response to Young's letter asserted that, if petitioner chose to accept Mr. Walker's interest in the Happy Valley property within 1 year of the end of their marriage and then decided to sell her undivided interest in that property, she would be responsible for the entire amount of tax resulting from the sale. The record in this case demonstrates that this option was the one that petitioner chose to follow.

Petitioner voluntarily entered into the Settlement Agreement with Mr. Walker on September 22, 1997, and accepted his 25-percent interest in the Happy Valley property in consideration

for a credit against the $500,000 equalizing money judgment.  In accordance with the Settlement Agreement, Mr. Walker transferred his 25-percent interest in the Happy Valley property to petitioner on September 26, 1997, pursuant to a quitclaim deed. The quitclaim deed was recorded on October 2, 1997.  Thus, Mr. Walker no longer had any rights in the Happy Valley property as of the date petitioner signed the bargain and sale deed that conveyed an undivided 50-percent interest in the Happy Valley property to Parker Development, October 10, 1997.

Petitioner entered into the foregoing transactions after having been advised of the tax consequences of the form of those transactions.  There is no reason here to disregard that form.

### B.  Application of Section 1041 to the Transactions Involving the Happy Valley Property

Because petitioner cannot invoke the doctrine of substance over form, we must consider whether two separate transactions qualify for nonrecognition-of-gain treatment under section 1041(a).  The first transaction involves Mr. Walker's transfer of his 25-percent interest in the Happy Valley property to petitioner in consideration for a Settlement Agreement that provided to Mr. Walker a credit against the $500,000 equalizing money judgment that he owed to petitioner.  The second transaction involves petitioner's sale of her undivided 50-percent interest in the Happy Valley property to an unrelated third party, Parker Development.

Section 1041 provides in pertinent part as follows:

> SEC. 1041.  TRANSFERS OF PROPERTY BETWEEN SPOUSES OR INCIDENT TO DIVORCE.
>
> (a) General Rule.--No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)--
>
> (1) a spouse, or
>
> (2) a former spouse, but only if the transfer is incident to the divorce.
>
> (b) Transfer Treated as Gift; Transferee Has Transferor's Basis.--In the case of any transfer of property described in subsection (a)--
>
> (1) for purposes of this subtitle, the property shall be treated as acquired by the transferee by gift, and
>
> (2) the basis of the transferee in the property shall be the adjusted basis of the transferor.
>
> (c) Incident to Divorce.--For purposes of subsection (a)(2), a transfer of property is incident to the divorce if such transfer--
>
> (1) occurs within 1 year after the date on which the marriage ceases, or
>
> (2) is related to the cessation of the marriage.

Mr. Walker's transfer of his 25-percent interest in the Happy Valley property to petitioner on September 26, 1997, took place incident to their divorce because it occurred within 1 year after the date on which their marriage ceased, December 20, 1996. Sec. 1041(c)(1).  Consequently, Mr. Walker's transfer of his interest in the Happy Valley property to petitioner qualified for

nonrecognition-of-gain treatment under section 1041(a)(2). See also sec. 1.1041-1T(d), Q&A-10, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984) (providing that the transferor of property under section 1041 is to recognize no gain or loss on the transfer, regardless of whether the transfer is in exchange for consideration). Petitioner received the 25-percent interest in the Happy Valley property with a basis equal to Mr. Walker's adjusted basis in that 25-percent interest. Sec. 1041(b); see also sec. 1.1041-1T(d), Q&A-11, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984) (providing that, in all transfers subject to section 1041, the basis of the transferred property in the hands of the transferee is the adjusted basis of such property in the hands of the transferor immediately before the transfer, regardless of whether the transfer is a bona fide sale in which the transferee pays the transferor consideration for the transferred property).

Petitioner's sale of her undivided 50-percent interest in the Happy Valley property in October 1997 is not a transaction that falls within the statutory language of section 1041(a) because it was not a transfer to or on behalf of her spouse or her former spouse and incident to divorce. Therefore, section 1041(a) does not relieve petitioner from recognizing the gain resulting from the sale of her interest in the Happy Valley property.

Petitioner argues that section 1.1041-1T(c), Q&A-9, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984), qualifies her for nonrecognition-of-gain treatment under section 1041(a) for the sale of the 25-percent interest in the Happy Valley property received from Mr. Walker in September 1997. Section 1.1041-1T(c), Q&A-9, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984), applies only to transfers made by a taxpayer to a third party on behalf of that taxpayer's spouse or former spouse. Generally, a transfer by a taxpayer is considered to have been made "on behalf of" that taxpayer's spouse or former spouse if it satisfied a specific legal obligation or liability of that taxpayer's spouse or former spouse. Ingham v. United States, 167 F.3d 1240, 1243-1245 (9th Cir. 1999); Arnes v. United States, 981 F.2d 456, 459 (9th Cir. 1992); Blatt v. Commissioner, 102 T.C. 77, 81 (1994). As discussed above, Mr. Walker's transfer of his 25-percent interest in the Happy Valley property on September 26, 1997, satisfied a specific legal obligation that he owed to petitioner (i.e., a portion of the equalizing money judgment) and gave her control over an undivided 50-percent interest in that property. Petitioner's subsequent sale of her interest in the Happy Valley property did not satisfy any other legal obligation or liability that Mr. Walker owed to her or anyone else. Thus, petitioner did not make the sale "in the interest of" or "as a representative of" Mr. Walker. Cf. Craven

v. United States, 215 F.3d 1201, 1207 (11th Cir. 2000); Read v. Commissioner, 114 T.C. 14, 36-37 (2000). Therefore, petitioner's sale of her interest in the Happy Valley property was not made on behalf of Mr. Walker. Accordingly, section 1.1041-1T(c), Q&A-9, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984), is not applicable to this case.

### C. Petitioner's Argument That She Filed Her 1997 and 1998 Returns in Accordance With an Agreement That She Had With Mr. Walker

Petitioner relies on Friscone v. Commissioner, T.C. Memo. 1996-193, for her argument that she filed her 1997 and 1998 returns in accordance with an agreement that she had with Mr. Walker that he would report one-half of the gain resulting from the sale of petitioner's undivided 50-percent interest in the Happy Valley property. The principal issue in Friscone was whether, following an agreement between a husband and wife that was incorporated in a divorce decree, the gain on the subsequent sale of certain stock owned by the husband was to be attributed to him in its entirety or only in the portion awarded to him by the divorce decree. In holding that only the gain on the portion awarded to the husband by the divorce decree was to be attributed to him, we considered the manner in which the divorce decree divided the proceeds of the sale of the stock between the husband and wife. Even though title to the stock remained with the husband up to the time of its sale under the terms of the divorce

decree, we concluded that the divorce decree substantively transferred ownership of 55 percent of the stock to the wife. Therefore, we decided that the husband was liable for the tax on only 45 percent of the proceeds of the sale of the stock.

Friscone reflects the proposition that, when a divorce decree controls the apportionment of property between a husband and wife, each of them is liable only for the tax on the gain resulting from the sale of their portion of that property to a third party. Petitioner's and Mr. Walker's divorce decree set forth that they would receive separate 25-percent interests in the Happy Valley property. As discussed above, petitioner accepted Mr. Walker's 25-percent interest in the Happy Valley property in consideration for a credit against the $500,000 equalizing money judgment. Mr. Walker then transferred his 25-percent interest in the Happy Valley property to petitioner pursuant to a quitclaim deed. This transfer extinguished his ownership interest in the Happy Valley property. Consequently, the divorce decree no longer controlled the apportionment of the Happy Valley property between petitioner and Mr. Walker as of the date of its sale to Parker Development. Therefore, the reasoning of Friscone is of no help to petitioner in this case.

Because petitioner controlled an undivided 50-percent interest in the Happy Valley property at the time of its sale, she had the right to receive the income generated by the sale of

that interest and to enjoy the benefit of that income when it was paid to her by Parker Development. One of the general principles of tax law is that income is taxed "to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid." Helvering v. Horst, 311 U.S. 112, 119 (1940). This general principle dictates that the gain that was recognized on the sale of petitioner's interest in the Happy Valley property was taxable to her. Consequently, no effect can be given to an agreement between petitioner and Mr. Walker as to how the gain on the sale of her interest in the Happy Valley property was going to be reported on her 1997 and 1998 returns. See Pesch v. Commissioner, 78 T.C. 100, 129 (1982); Neeman v. Commissioner, 13 T.C. 397, 399 (1949), affd. per curiam 200 F.2d 560 (2d Cir. 1952); Estate of Ballantyne v. Commissioner, T.C. Memo. 2002-160, affd. sub nom. Ballantyne v. Commissioner, 341 F.3d 802 (8th Cir. 2003); Bonner v. Commissioner, T.C. Memo. 1979-435.

Section 6662 Accuracy-Related Penalty

Respondent determined accuracy-related penalties under section 6662(a). Under section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax due to, inter alia, negligence or disregard of the rules or regulations. Sec. 6662(b)(1). The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary

and reasonable care in the preparation of a tax return.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  A taxpayer's disregard is "intentional" if the taxpayer knows of the rule or regulation that is disregarded.  Sec. 1.6662-3(b)(2), Income Tax Regs. Respondent has the burden of production under section 7491(c) and must come forward with sufficient evidence indicating that it is appropriate to impose the penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Once respondent meets his burden of production, the taxpayer must come forward with persuasive evidence that respondent's determination is incorrect.  Id.

As discussed above, petitioner was advised as to the tax consequences of her transactions involving the Happy Valley property by Coburn in his correspondence of May 1, 1997.  Even though petitioner was aware of the tax consequences of these transactions, her 1997 and 1998 returns do not reflect the correct amount of gain that she recognized on the sale of her undivided 50-percent interest in the Happy Valley property because she failed to provide to Coburn the Settlement Agreement and quitclaim deed that transferred Mr. Walker's 25-percent interest in the Happy Valley property to her.  (When Mr. Walker filed an amended return for 1997, petitioner made a misrepresentation to Coburn by stating that the transaction

embodied by the Settlement Agreement and quitclaim deed did not take place.) This evidence satisfies respondent's burden of production under section 7491(c).

Petitioner contends that respondent's determination to impose the accuracy-related penalty due to negligence or disregard of the rules or regulations is incorrect because the position that she took on her 1997 and 1998 returns had a reasonable basis. A return position that has a reasonable basis is not attributable to negligence or disregard of the rules or regulations. See sec. 1.6662-(3)(b)(1), (3), Income Tax Regs. The reasonable basis standard is not satisfied, however, by a return position that is merely arguable or that is merely a colorable claim. See sec. 1.6662-3(b)(3), Income Tax Regs.; see also <u>Indeck Energy Servs., Inc. v. Commissioner</u>, T.C. Memo. 2003-101 (expressing that the reasonable basis standard was a standard significantly higher than the "not frivolous" standard prior to that standard's being defined by an amendment to section 1.6662-3(b), Income Tax Regs.).

Petitioner has presented neither persuasive evidence nor authority justifying her rejection of the tax advice she received prior to entering into the transactions with Mr. Walker and Parker Development. Petitioner's position on her 1997 and 1998 returns was based on an unwarranted assumption that she could disavow the form of the transactions involving the Happy Valley

property for their alleged substance. Therefore, we conclude that petitioner did not have a reasonable basis for the position taken on her 1997 and 1998 returns.

A taxpayer may also be liable for a penalty under section 6662(a) on the portion of an underpayment due to a substantial understatement of income tax. Sec. 6662(b)(2). An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return, less any rebate. Sec. 6662(d)(2)(A). In this case, the understatement on each of petitioner's returns satisfies the definition of "substantial". The amount of the understatement subject to the penalty is reduced, however, to the extent it is attributable to the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment. Sec. 6662(d)(2)(B)(i). Alternatively, the amount of the understatement may be reduced to the extent it is attributable to any item if the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return and there is a reasonable basis for the tax treatment of such item by the taxpayer. Sec. 6662(d)(2)(B)(ii).

Petitioner's treatment of the transactions involving the Happy Valley property on her 1997 and 1998 returns was not supported by substantial authority.  Furthermore, petitioner neither disclosed the relevant facts in those returns nor had a reasonable basis for the position taken on those returns.  Consequently, the understatements of income tax on petitioner's 1997 and 1998 returns cannot be reduced under section 6662(d)(2)(B).

Whether the section 6662(a) penalty is applied because of an underpayment attributable to negligence or disregard of the rules or regulations or to a substantial understatement of income tax, the penalty will not be imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1); Higbee v. Commissioner, supra at 448-449.  The decision as to whether a taxpayer acted with reasonable cause and in good faith is made by taking into account all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Generally, the most important factor in deciding whether a taxpayer acted with reasonable cause and in good faith is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability.  Id.  Petitioner primarily argues that she acted with reasonable cause and in good faith because she filed her 1997 and 1998 returns in accordance with an agreement that she

had with Mr. Walker that he would report one-half of the gain resulting from the sale of petitioner's undivided 50-percent interest in the Happy Valley property.  In essence, petitioner argues that, even though she incorrectly reported the amount of the gain that she realized on the sale of her interest in the Happy Valley property on her 1997 and 1998 returns, we should conclude that she believed that such an agreement could shift a portion of her tax liability to Mr. Walker.  Respondent counters by arguing that Mr. Walker never told petitioner, either orally or in writing, that he would pay any amount of the tax resulting from the sale of the Happy Valley property.

As discussed above, the alleged agreement that petitioner argues existed between herself and Mr. Walker would not have relieved her from her duty to assess her correct tax liability for 1997 and 1998.  See Pesch v. Commissioner, 78 T.C. at 129; Neeman v. Commissioner, 13 T.C. at 399; Estate of Ballantyne v. Commissioner, T.C. Memo. 2002-160; Bonner v. Commissioner, T.C. Memo. 1979-435.  Furthermore, the evidence of the alleged agreement is conflicting and unreliable.  Petitioner's purported belief is ultimately attributed by her to the agreement that she would receive $500,000 in the divorce settlement free of tax and not to any agreement with Mr. Walker at the time of the 1997 transfers of the Happy Valley property.  The Settlement Agreement's terms, to the contrary, suggest that petitioner would

be assumed to pay $60,000 in capital gains taxes on the sale of the Happy Valley property to a third party and that the credit received by Mr. Walker against his debt to her by reason of the transfer would be reduced proportionately.

The compelling facts again are that petitioner had been advised of the tax consequences of the transactions involving the Happy Valley property before she entered into them.  She should have provided Coburn with the Settlement Agreement and quitclaim deed so that he could determine the proper tax treatment of Mr. Walker's transfer of his 25-percent interest in the Happy Valley property to her.  Because petitioner failed to provide this information to Coburn and subsequently denied to him that the transaction occurred, we conclude that petitioner's efforts to assess her proper tax liability were neither consistent with reasonable cause nor in good faith.  See Weis v. Commissioner, 94 T.C. 473, 487 (1990); Pessin v. Commissioner, 59 T.C. 473, 489 (1972); Estate of Ballantyne v. Commissioner, supra; sec. 1.6664-4(c)(1)(i), Income Tax Regs.; see also Nowak v. Commissioner, T.C. Memo. 1994-428 (upholding imposition of negligence penalty where taxpayers ignored competent tax advice given to them by their accountant about proposed transaction).

Conclusion

We hold that respondent did not err in his determination that petitioner failed to report the correct amount of gain from

the sale of her interest in the Happy Valley property on her Federal income tax returns for 1997 and 1998. We also hold that respondent's determination to impose accuracy-related penalties under section 6662(a) was warranted due to petitioner's negligence or disregard of the rules or regulations or, alternatively, to a substantial understatement of income tax. We have considered the arguments of the parties not specifically addressed in this opinion. Those arguments are either without merit or irrelevant to our decision.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.